UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

Premier Dealer Services, Inc.,

    Plaintiff,

    v.                               Case No. 1:10cv121

Eric D. Fifield, *et al.*,             Judge Michael R. Barrett

    Defendants.

## ORDER

This matter is before the Court upon Defendants Eric D. Fifield, Enterprise Financial Group, Inc. ("EFG"), and Walkaway USA, LLC's Motion to Dismiss. (Doc. 7.) Plaintiff Premier Dealer Services, Inc. ("Premier") filed a Response in Opposition (Doc. 11). In addition, at the Court's direction, the parties have filed supplemental briefs. (Docs. 26, 27.)

Defendants move to dismiss Premier's Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction.

## I.    BACKGROUND

Premier brings claims for violation of the Computer and Fraud Abuse Act ("CFAA"), breach of contract, breach of fiduciary duty, misappropriation of trade secrets, tortious interference with contract and conspiracy.

Premier is an Illinois corporation. (Doc. 9, ¶ 2.) Premier is a third-party administrator for vehicle after-market products and programs. (Id.) Fifield is a resident of Illinois. (Doc. 7-1, Eric Fifield Aff. ¶ 2.) Fifield was employed by Great American Insurance Company from April of 2005 until October 31, 2009. (Id., ¶ 5.) Great American is based in Cincinnati, Ohio. During his period of employment with Great American, Fifield was

assigned to work for Premier, which at that time was a wholly-owned subsidiary of Great American. (Id.) Premier's operations were conducted from its headquarters in San Diego, California. Fifield worked as a Region Sales Manager. (Doc. 9, ¶ 6.) In this position, Fifield worked with independent agents who were assigned to market the Programs to automobile dealers and their customers. (Id.)

Limited discovery conducted by the parties has shown that users of the Premier's computer system logged onto the network by first passing through Premier's firewall server in San Diego. (Doc. 25, Richard Collins Dep. 17.) The user is then directed to Premier's Virtual Private Network ("VPN") server in San Diego. (Id.) The VPN server then sends the user's credentials to Great American's RSA Server in Cincinnati. (Id. at 26.) Once approved, the user is routed ack to the VPN Server in San Diego and provided access to the database server in San Diego. (Id.) The San Diego database server contains all of Premier's proprietary information and company materials. (Id. at 32.)

On November 1, 2009, Premier was acquired by PDS Holdings, Inc. Fifield was hired by the new owner. (Fifield Aff. ¶ 10.) As part of his employment, Fifield signed a non-compete agreement which included an Ohio choice of law provision. (Doc. 9-1.) Fifield remained an employee of Premier until February 12, 2010. During these three months, Fifield continued to reside in Illinois and did not visit Ohio. (Fifield Aff., ¶ 15.) Also during this time, Premier's computer system continued to operate in the same manner as described above. (Collins Dep. at 32.)

Defendant EFG is a Texas corporation having its principal place of business in Irving, Texas. (Doc. 9, ¶ 5.) EFG is a direct competitor of Premier. (Id.) Defendant Walkaway is a Texas limited liability company having its principal place of business in

Irving, Texas. (Doc. 9, ¶ 4.) Walkaway is a wholly-owned subsidiary of Defendant EFG. (Id.) Walkaway has no employees, and was created to be the license-holder of the Walkaway program in the United States. (Id.)

Fifield resigned from his employment with Premier and began working for EFG. As an employee of EFG, Fifield has made sales calls to two independent agents located in Ohio. (Fifield Supp. Aff. ¶ 2.) Fifiled was able to engage one of the agents. (Id. ¶ 4.)

Fifield has been in Ohio on four or five occasions. (Fifield Aff. ¶ 3.) Two of these visits were for personal reasons, and two or three of the visits were as part of Fifield's employment with Great American. (Id.)

## II.  ANALYSIS

Federal Rule of Civil Procedure 12(b)(2) provides for dismissal of a claim for lack of jurisdiction over the person. The plaintiff bears the burden of establishing that such jurisdiction exists. *See Youn v. Track, Inc.*, 324 F.3d 409, 417 (6th Cir. 2003). Ordinarily, the plaintiff must prove jurisdiction by a preponderance of the evidence. *Dean v. Motel 6 Operating L.P.*, 134 F.3d 1269, 1272 (6th Cir. 1998). However, a different standard applies where no evidentiary hearing on the jurisdiction question is conducted, even if limited discovery is conducted. *Id.*[1] When a district court rules on a jurisdictional motion to

---

[1] *But see Air Products and Controls, Inc. v. Safetech Intern., Inc.*, 503 F.3d 544, 549 (6th Cir. 2007) ("Where, as here, the district court relies solely on written submissions and affidavits to resolve a Rule 12(b)(2) motion, rather than resolving the motion after either an evidentiary hearing or limited discovery, the burden on the plaintiff is "relatively slight," *Am. Greetings Corp. v. Cohn*, 839 F.2d 1164, 1169 (6th Cir. 1988), and "the plaintiff must make only a *prima facie* showing that personal jurisdiction exists in order to defeat dismissal").

dismiss without conducting an evidentiary hearing, the court must consider the pleadings and affidavits in a light most favorable to the plaintiff. *Id.*, citing *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1996). However, a court is not required "to ignore undisputed factual representations of the defendant which are consistent with the representations of the plaintiffs." *Kerry Steel, Inc. v. Paragon Indus., Inc.*, 106 F.3d 147, 153 (6th Cir. 1997).

Depending on the type of minimum contacts in a case, personal jurisdiction can either be specific or general. *Air Products and Controls, Inc. v. Safetech Intern., Inc.*, 503 F.3d 544, 549 (6th Cir. 2007), *citing Reynolds v. Int'l Amateur Athletic Fed'n*, 23 F.3d 1110, 1116 (6th Cir. 1994). General jurisdiction exists in cases in which a defendant's "continuous and systematic" conduct within the forum state renders that defendant amenable to suit in any lawsuit brought against it in the forum state. *Perkins v. Benguet Consolidated Mining Co.*, 342 U.S. 437, 445-47 (1952). Specific jurisdiction exists in cases in which the subject matter of the lawsuit arises out of or is related to the defendant's contacts with the forum. *Conti v. Pneumatic Prods. Corp.*, 977 F.2d 978, 981 (6th Cir.1992). Premier claims that it can establish that this Court has both general and specific jurisdiction over Defendants.

In a diversity case, this Court must first look to the law of the forum state to determine whether the exercise of jurisdiction is proper under the state's long-arm statute. *See Calphalon Corp. v. Rowlette*, 228 F.3d 718, 721 (6th Cir. 2000). Next, this Court must determine whether the exercise of jurisdiction meets constitutional due process requirements. *Id.* Although the Ohio Supreme Court has ruled that the Ohio long-arm

statute does not extend to the constitutional limits of the Due Process Clause, the central inquiry is whether minimum contacts are satisfied so as not to offend "traditional notions of fair play and substantial justice." *Id.*, citing *Cole v. Mileti*, 133 F.3d 433, 436 (6th Cir. 1998).[2]

Ohio's long-arm statute provides in part that:

A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's:

(1) Transacting any business in this state;

. . .

(3) Causing tortious injury by an act or omission in this state;

(4) Causing tortious injury in this state by an act or omission outside this state if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state; . . .[3]

---

[2]There is some authority in this Court which finds that Ohio courts do not recognize general jurisdiction. *See Industrial Fiberglass Specialties, Inc. v. Alsco Indus. Products, Inc.*, 2009 WL 982805, *3 (S.D.Ohio April 13, 2009) (unpublished); *Signom v. Schenck Fuels, Inc.*, 2007 WL 1726492 at *3 (S.D.Ohio June 13, 2007) (unpublished). However, the Ohio Supreme Court, relying on Sixth Circuit caselaw, has recently noted that personal jurisdiction can be either general or specific. *Kauffman Racing Equip., L.L.C. v. Roberts*, 2010 WL 2330347, *6 (Ohio June 10, 2010) (slip op.).

[3]The statute provides in full:

A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's:

(1) Transacting any business in this state;

(2) Contracting to supply services or goods in this state;

(3) Causing tortious injury by an act or omission in this state;

(4) Causing tortious injury in this state by an act or omission outside this state if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services

Ohio Rev.Code Ann. § 2307.382(A).  According to the Ohio Supreme Court, the "transacting any business" basis for extending jurisdiction set forth in Ohio Revised Code § 2307.382(A)(1), "is very broadly worded and permit[s] jurisdiction over nonresident defendants who are transacting any business in Ohio."  *Kentucky Oaks Mall Co. v. Mitchell's Formal Wear, Inc.*, 559 N.E.2d 477, 481 (1990).

Premier argues that this Court has general jurisdiction over EFG based on the continuous and systematic contacts formed by EFG's marketing of its Walkaway program and other programs in Ohio.  Specifically, there are forty-one car dealerships or dealer groups which market EFG products in Ohio.  (Pappanastos Aff. at 2.)  In addition, EFG has entered into a partnership with the Hyundai automobile manufacturer to create the "Hyundai Assurance Program," which includes the Walkway program.  (Klees Depo. at 13-

---

rendered in this state;

(5) Causing injury in this state to any person by breach of warranty expressly or impliedly made in the sale of goods outside this state when he might reasonably have expected such person to use, consume, or be affected by the goods in this state, provided that he also regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state;

(6) Causing tortious injury in this state to any person by an act outside this state committed with the purpose of injuring persons, when he might reasonably have expected that some person would be injured thereby in this state;

(7) Causing tortious injury to any person by a criminal act, any element of which takes place in this state, which he commits or in the commission of which he is guilty of complicity;

(8) Having an interest in, using, or possessing real property in this state;

(9) Contracting to insure any person, property, or risk located within this state at the time of contracting.

Ohio Revised Code § 2307.382(A).

14, 16.) EFG administers all claims made by Ohio residents through the Walkaway program. (Id. at 21.)

The court finds that these contacts are sufficient to establish personal jurisdiction over EFG under Ohio's long-arm statute.

Because Ohio law would permit this Court to exercise personal jurisdiction, the next step is to decide whether such an exercise meets the requirements of due process. To comport with due process, an exercise of personal jurisdiction requires that a defendant "have certain minimum contacts such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). There must be "some act" by which defendants "purposefully avail[ ]" themselves of the "privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985). The contacts must therefore create a "substantial connection" to the forum state-where defendants have deliberately "engaged in significant activities within a State" or have "created 'continuing obligations' between [themselves] and residents of the forum-and "proximately result from the actions by the defendant[s] themselves," such that it is "presumptively not unreasonable to require [defendants] to submit to the burdens of litigation in that forum as well." *Id.* at 475-76.

The Court finds that Premier has established that EFG has the kind of "continuous and systematic" contacts required to establish general jurisdiction.[4] EFG markets its programs to car dealerships in Ohio. EFG then administers any claims made by the Ohio

---

[4] While it was not addressed by the parties, this jurisdiction would extend to Defendant Walkaway.

residents under the programs. These transactions are part of an ongoing obligation between Premier and Ohio residents that proximately resulted from Premier's marketing activities. *Accord Asahi Metal Indus. Co. v. Superior Court of Cal.*, 480 U.S. 102, 112 (1987) (explaining that "substantial connection" is created where a company markets its product through a distributor who has agreed to serve as the sales agent in the forum state).

Premier argues that because Fifield is employed by EFG, this Court has jurisdiction over him based on the same facts. However, Ohio courts have held that general jurisdiction of individuals who have not entered Ohio and have no regular dealings with Ohio cannot be based upon jurisdiction of the corporation for whom they work. *Costaras v. NBC Universal, Inc.*, 409 F.Supp.2d 897, 905 (N.D.Ohio 2005), *citing Galloway v. Lorimar Motion Picture Mgmt., Inc.*, 562 N.E.2d 949 (Ohio App. 5 Dist. 1989).

Therefore, Premier must separately show that this Court has jurisdiction over Fifield. Premier argues that Fifield's conduct satisfies subparagraphs (1), (3) and (4) of Ohio's long-arm statute. Premier argues Fifield "transacted business" by landing the Ohio agent for EFG's business. Premier argues Fifield satisfies subparagraphs (3) and (4) by using Premier's trade secrets he allegedly used to promote his marketing activities in Ohio on behalf of EFG.

Fifield does not dispute that Premier can satisfy the requirements of Ohio's long-arm statute. Instead, Fifield argues that Premier cannot meet the constitutional requirements necessary for specific personal jurisdiction.

Specific jurisdiction may be premised on a single act of the defendant. *McGee v.*

*International Life Ins. Co.*, 355 U.S. 220, 222 (1957). The Sixth Circuit has established a three-part test to governs whether a defendant is subject to specific personal jurisdiction:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Southern Mach. Co., Inc. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968). Each criterion must be satisfied for a court to find its jurisdiction consistent with due process. *Id.*

Under the *Southern Machine* test, this Court first must determine whether Fifield purposefully availed himself of "the privilege of transacting business" in Ohio. *Id.* at 382. "This 'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts." *Id.* at 381. Jurisdiction cannot be established through a plaintiff's " 'unilateral activit[ies]' " aimed at a nonresident Defendant. *See Burger King*, 471 U.S. at 475, *quoting Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984). Furthermore, the Supreme Court has stated that the act of contracting alone is not adequate to "automatically establish sufficient minimum contacts in the other party's home forum," but that a court should look to other factors such as "prior negotiations," "contemplated future consequences," "the terms of the contract," and "the parties' actual course of dealing" to determine whether the contract constitutes sufficient minimum contact with the forum. *Id.* 478-79.

The Court finds that the two sales calls Fifield made as an EFG employee to independent agents are not sufficient to establish "purposeful availment." However, the

question remains whether Fifield's employment with Premier serves to establish this requirement.

Where a party enters into a contract governed by Ohio law and purposefully perpetuates the contractual relationship via electronic and other communications, that party "should have reasonably foreseen that doing so would have consequences in Ohio." *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1265 (6th Cir.1996). Such contracting parties are on notice that they should reasonably be expected to be haled into court in the forum. *See Burger King*, 471 U.S. at 475 (stating that with the benefits of protection under a forum's laws come the burdens of possible litigation).

The Court notes that the non-compete agreement between Premier and Fifield contains an Ohio choice-of-law provision. The record also shows that Fifield was an employee of Great American, which is headquartered in Ohio. However, as an employee, Fifield's communications were with Premier, which is an Illinois corporation headquartered in California. Fifield only visited Ohio on two or three occasions as part of his employment with Great American. Evidence in the record shows that a server in Ohio is used to authenticate the credentials of employees accessing Premier's VPN server. Yet, the database server containing the information being accessed by employees is located in California.

As a consequence, Fifield's activities in Ohio do not give rise to Premier's claims. The two sales calls made cannot support Premier's claims based on the breach of the non-compete agreement. Similarly, Fifield's access of Premier's trade secrets, which were stored on the databases in California, cannot give rise to Premier's claim of misappropriation of trade secrets. In addition, Fifield's connection to Premier's databases

through Great American's RSA server in Ohio did not give rise to Premier's claim under CFAA.

The Court finds that there is very little in the way of the acts of Fifield or the consequences caused by Fifield with a connection to Ohio. Therefore, the Court concludes that Premier has not established that this Court has personal jurisdiction over Fifield.

### III. CONCLUSION

Based on the foregoing, Defendants Eric D. Fifield, Enterprise Financial Group, Inc. ("EFG"), and Walkaway USA, LLC's Motion to Dismiss (Doc. 7) is **GRANTED in PART** and **DENIED in PART**. Defendants' Motion is granted as to Fifield, but denied as to EFG and Walkaway. A dismissal for lack of jurisdiction is a dismissal without prejudice. *See Intera Corp. v. Henderson*, 428 F.3d 605, 620 (6th Cir. 2005) (holding that "dismissals for lack of personal jurisdiction should be made 'without prejudice'"). Therefore, the dismissal of Premier's claims against Fifield shall be dismissed **WITHOUT PREJUDICE**.

**IT IS SO ORDERED.**

    */s/ Michael R. Barrett*
Michael R. Barrett, Judge
United States District Court